UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

KRISTA TORRES,

                          Plaintiff,

        – against –                                    **<u>OPINION AND ORDER</u>**

                                                       18 Civ. 2919 (ER)
CENTRAL AVENUE NISSAN, INC.,
JAMES O'ROURKE, and ALI DOE,

                          Defendants.
_____

<u>Ramos, D.J.</u>:

        Krista Torres filed this action on April 3, 2018.  Doc. 1.  In her operative

complaint, Torres brings claims for sexual harassment and retaliation in violation of Title

VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights

Law ("NYSHRL"), and for discrimination on the basis of disability in violation of the

Americans with Disability Act ("ADA").  Doc. 20.  Pending before the Court is

Defendants' motion for summary judgment on all of Torres's claims.  Doc. 35.

        For the reasons set forth below, Defendants' motion is GRANTED in part and

DENIED in part.

## I.    BACKGROUND

### A. Factual Background

        Central Avenue Nissan, Inc. ("Central Avenue") is a car dealership in Yonkers,

New York that provides retail car services.  Doc. 42 ¶ 1.  James Rourke was the general

manager and part-owner of Central Avenue at all relevant times.[1]  *See* Docs. 37-17 at 7:4–

17 and 39-18 at 7:6–18.  Torres was employed at Central Avenue for approximately a

five-and-a-half-month period from the end of April 2016 through November 15, 2016.

*See* Doc. 42 ¶¶ 3, 7.

_____

[1] Although the caption lists "James O'Rourke" as a defendant, Defendants note that the defendant's actual
name is "James Rourke."  *See* Doc. 36 at 5 n.1.

*1. Job Responsibilities and Non-discrimination Policy*

Torres worked as a salesperson her entire time at Central Avenue.  *Id.* ¶ 8.  When she was hired, she received a written copy of the job description for a salesperson that specified her duties at work.  *See id.* ¶ 9; *see also* Docs. 37-2 and 39-17 at 55:19–56:4. Those duties included maintaining a professional appearance, attending sales meetings and trainings, greeting and assisting customers, demonstrating the products to customers, taking customers on test drives, and coordinating delivery of cars.  Doc. 42 ¶ 9.  Torres also received and signed Central Avenue's non-discrimination policy (the "Policy"), which contains procedures for reporting harassment.  *Id.* ¶¶ 4–6.  Specifically, the Policy provides that "[a]ll employees are expected to avoid any behavior or conduct that could reasonably be interpreted as unlawful harassment."  Doc. 37-1 at 1.  The Policy notes that harassment includes unwelcome conduct that is based on a person's sex or disability.  *Id.* The Policy also provides examples of sexual harassment, such as "sex-oriented verbal 'kidding,'" "foul or obscene language or gesture," "physical contact such as patting, pinching, or brushing against another's body," and "demands for sexual favors."  *Id.*

Under the reporting procedures outlined in the Policy, employees are to report any alleged sexual harassment to their immediate supervisor or to one of the owners of the dealership.  *Id.* at 2.  From there, an investigation will be conducted, although the Policy fails to include many specifics regarding the investigation process—including who conducts the investigations.  *See id.*  However, Rosa Dias, the comptroller at Central Avenue, testified that the owners of the dealership have historically conducted investigations pursuant to the Policy and decided whether an allegation was frivolous. *See* Doc. 40-1 at 26:9–27:13.  The Policy also states that, "[i]f the investigation concludes that the allegation is without merit, the claimant may be subject to discipline for bringing a frivolous complaint."  Doc. 37-1 at 2.

*2. Incidents of Alleged Disability Discrimination*

Torres suffers from scoliosis and has a metal rod prosthesis in her back.  *See* Doc. 42 ¶ 2.  Torres alleges that her scoliosis affected what she could do at Central Avenue. According to Torres, due to her scoliosis, she could not lift anything heavy, and she could not stand for long periods of time, *i.e.*, no more than an hour.  Doc. 39-17 at 34:11–21, 36:25–37:10.  Additionally, Torres testified that she was unable to change license plates or bend down.  *Id.* at 34:23–35:25.  According to Torres, she informed Central Avenue of her physical limitations due to her scoliosis during the interview process, specifically that she could not stand for certain periods of time, she had to take breaks, she could not lift heavy objects, and she could not stand outside for a certain period of time in the heat.  *Id.* at 46:8–24, 47:6–48:25, 91:16–24.  Torres also testified that, in response to her statements about her disability, Sam Salvin, the general sales manager at the time, stated that he would accommodate her needs.  *See id.* at 53:2–5; *see also* Doc. 39-18 at 12:6–11. According to Torres, she also informed Rourke during a subsequent interview about her physical limitations, including that she could not stand for a certain period of time.  Doc. 39-17 at 53:22–54:23.

Torres also testified that she complained about her treatment due to her disability while she worked at Central Avenue, including to Salvin and Rourke.  *Id.* at 77:7–78:23. In her testimony, she shared several instances in which she alleges Central Avenue failed to accommodate her limitations due to her scoliosis.  For example, Torres stated that one time Rourke and Ali Mahidashti, her direct supervisor, directed once to drive a car to Rhode Island for a car swap.  *Id.* at 89:15–22.  According to Torres, she informed them that the drive was too far, and that she was not comfortable being a car for so long, in part because she could not sit for the time required to drive to Rhode Island from the dealership.  *Id.* at 90:3–20.  She testified that, at most, she could sit in a car for half an hour while driving.  *Id.* at 90:21–23, 92:5–13.  According to Torres, Rourke and

Mahidashti responded by saying that "it was [her] job. That [she] had to do it." *Id.* at
92:16–20.

Torres also recounted having to stand outside in the sun for long periods of time
to sell cars during her first two months on the job. *Id.* at 93:18–22, 97:3–15. More
specifically, Torres testified that the entire management team told her that she had to stand
outside to get new customers because she was new, and they told her to stand outside
until she brought in a customer with whom she could make a deal. *See id.* at 93:20–94:9,
96:6–17, 100:21–101:4. According to Torres, both Rourke and Mahidashti stated that she
had to stand outside to get new customers. *Id.* at 100:25–101:20. Torres stated that she
spent a couple of hours in the sun every shift during those first two months, sometimes
standing in the sun for an hour and a half at a time. *Id.* at 98:9–12. After her first two
months, however, she was no longer required to stand outside. *Id.* at 97:8–15.

Additionally, Torres testified that the management team directed her to remove
and affix license plates on cars despite her physical limitations. *Id.* at 110:20–25.
According to Torres, she informed management that she could not constantly bend down
and change license plates because of her condition, and she asked if she could have
someone help her with the task. *Id.* at 111:2–10, 112:20–114:17, 115:2–7. Torres
testified that Rourke and other members of the management team responded by saying
that the task was part of her job description. *Id.* at 111:12–20. According to Torres, she
had approximately ten conversations with management about this issue. *See id.* at 112:5–
24.

Further, Torres testified, in one instance, Rourke and Mahidashti directed her to
transfer a car seat and a few other items between cars. *Id.* at 118:10–18, 121:3–17.
According to Torres, she was informed that transferring items between vehicles was one
of her responsibilities. *Id.* at 119:19–120:2. However, Torres stated that, physically, she
could not take out the car seat. *Id.* at 121:12–15. According to Torres, the management

team told that she still had to take out the car seat, and she ended up moving the seat herself. *Id.* at 121:18–122:3.

Finally, Torres testified that she was required to stand or sit for long periods of time with only one half-hour break per day. *Id.* at 127:12–128:14. According to Torres, she would often have to stand for seven-and-a-half hours at a time. *Id.* at 129:14–25. Torres stated that she complained to the management team several times, reminding them of her back problems and inability to stand for long periods of time. *Id.* at 130:7–20, 131:10–13. According to Torres, they replied by saying that standing for that duration was part of the job. *Id.* at 130:19–24. Torres recalled stating that she needed a break and requested a place to sit, although she did not recall what exactly management said in response to those requests. *Id.* at 132:12–23.

### 3. Incidents of Alleged Sexual Harassment

Torres also alleges that Rourke repeatedly harassed her during her employment. Torres recounted that, during the summer of 2016, Rourke told her and the other saleswomen they would need to wear bathing suits on the sales floor for an upcoming event. Doc. 39-17 at 184:4–185:4. Torres testified that, when she told Rourke that she felt uncomfortable with the idea, Rourke told her that she should not bother coming back to work if she did not wear the bathing suit. *Id.* at 187:13–20, 190:2–25. Further, Torres stated that, on the day of the event, she attempted wear a blouse instead, but Rourke demanded that she take off her blouse and directed her to wear the bathing suit. *Id.* at 191:15–192:17. Torres stated that she ultimately complied. *Id.* at 193:11–12.

Beginning in August 2016, Torres testified, Rourke began acting more aggressively towards her. *See id.* at 151:12–152:16. Up until then, according to Torres, Rourke would sometimes wink at her around the dealership. *Id.* at 152:5–16. But beginning in August, there were approximately five instances when Rourke approached her while she was working at her computer, hovered over her, and touched her shoulders. *Id.* at 151:12–152:4, 154:6–11, 155:5–12. Torres testified that when this happened, she

would move away and try to avoid Rourke, but she was too afraid to tell him to stop. *Id.* at 155:20–156:9. Additionally, Torres stated that Rourke would often try to get close to her and sit next to her. *See id.* at 154:6–12, 161:4–12. Torres also testified that, while they were working, Rourke asked her out for a date between five and ten times. *Id.* at 153:4–10, 154:6–9, 158:9–159:5. Further, according to Torres, Rourke approached her approximately five times just to say "how big his penis was and how great he was in bed." *Id.* at 153:10–13, 160:3–161:3. Torres noted that many of these actions would occur in the same interaction. *See id.* at 161:24–162:5. Finally, Torres testified that, at one point in August 2016, Rourke, fully clothed, walked up to her and slowly rubbed his groin area against her leg, such that she could feel his penis against her leg. *Id.* at 163:5–23, 165:13–20, 166:14–23. It is undisputed that Torres never reported any complaints regarding sexual harassment during her time at Central Avenue, either through the procedures outlined in the Policy or otherwise. *See* Doc. 42 ¶ 18.

*4. End of Employment at Central Avenue*

Torres's employment with Central Avenue ended after a dispute she had with Mahidashti. Doc. 42 ¶ 13. According to Torres, Mahidashti told her "to leave and don't come back." Doc. 39-17 at 143:24–144:12. It is undisputed that her dispute with Mahidashti did not concern discrimination or sexual harassment. Doc. 42 ¶ 14. Shortly after she was terminated, Torres was asked to come back to work at the dealership, but she declined the offer. *See id.* ¶ 15. According to Torres, when she was offered her job back by another part-owner of Central Avenue, she stated that she did not want to return to the dealership because "it's a hostile environment." Doc. 39-17 at 144:17–145:8. Torres admits that she did not explain what she meant by "hostile environment" to that part-owner, but she later testified that the term included Rourke's actions described above. *See id.* at 145:17–146:23.

### B. Procedural History

On April 3, 2018, Torres filed the instant suit.[2]  Doc. 1.  On July 20, 2018, Torres filed an amended complaint, removing Ali Doe as a defendant.  *See* Doc. 20.  In her amended complaint, Torres asserts claims for:  sexual harassment in violation of Title VII and the NYSHRL against Central Avenue, retaliation in violation of Title VII against Central Avenue, retaliation in violation of the NYSHRL against Defendants, disability discrimination in violation of the ADA against Central Avenue, and aiding and abetting in violation of the NYSHRL against Rourke.  *Id.*  On April 1, 2020, Defendants filed the instant motion for summary judgment.  Doc. 35.

## II.   DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *H.Daya Int'l Co., Ltd. v. Arazi*, 348 F. Supp. 3d 304, 308 (S.D.N.Y. 2018).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

---

[2] Torres received her right to sue letter from the Equal Employment Opportunity Commission on January 5, 2018.  Doc. 39-5.

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  "Only disputes over 'facts that might affect the outcome of the suit under the governing law' will preclude a grant of summary judgment."  *Malmsteen v. Universal Music Grp., Inc.*, 940 F. Supp. 2d 123, 130 (S.D.N.Y. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  As such, to defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson*, 477 U.S. at 256–57).  The Second Circuit, however, has noted that an extra measure of caution is merited in reviewing a motion for summary judgment in a discrimination action, as "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions."  *See Schiano v. Quality Payroll Sys., Inc.* 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### B. Hostile Work Environment Claims Under Title VII and the NYSHRL Against Central Avenue

#### 1. Hostile Work Environment

The same standards govern hostile work environment claims under Title VII and the NYSHRL.  *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 n.4 (2d Cir. 2014).  To establish a prima facie case of hostile work environment, a plaintiff must show that:  (1) "the discriminatory harassment was sufficiently severe or pervasive

to alter the conditions of the victim's employment and create an abusive working environment," (2) "that a specific basis exists for imputing the objectionable conduct to the employer," and (3) "the hostile conduct occurred because of" the plaintiff's sex.  *See Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (quotations omitted); *see also Springs v. City of New York*, 2019 WL 1429567, No. 17 Civ. 451 (AJN), at *10 (S.D.N.Y. Mar. 29, 2019).

"In considering whether a plaintiff has met this burden, courts should 'examin[e] the totality of the circumstances, including:  the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance.'" *Rivera*, 743 F.3d at 20 (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)).  "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quotation omitted).  "However, 'even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace.'"  *James v. N.Y.C. Health and Hosps. Corp.*, No. 15 Civ. 6015 (PAE), 2017 WL 3923675, at *9 (S.D.N.Y. Sept. 6, 2017) (quoting *Alfano*, 294 F.3d at 374).  Moreover, this "test has objective and subjective elements:   the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive."  *Alfano*, 294 F.3d at 374 (quotation omitted); *see also Creacy v. BCBG Max Azria Grp., LLC*, No. 14 Civ. 10008 (ER), 2017 WL 1216580, *7 (S.D.N.Y. Mar. 31, 2017).  Ultimately, "[t]he question of whether a work environment is sufficiently hostile

to violate Title VII is one of fact." *Chin-McKenzie v. Continuum Health Partners*, 876 F. Supp. 2d 270, 283 (S.D.N.Y. 2012) (quoting *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012)); *see also Schiano*, 445 F.3d at 605.

Central Avenue argues that, as a matter of law, Rourke's alleged conduct was not sufficiently severe or pervasive.  Central Avenue asserts that many of the incidents Torres alleges occurred at the same time.  According to Central Avenue's assessment of Torres's testimony, she presents a total of five advances by Rourke and three other isolated incidents over a five-and-a-half-month period of employment, and that frequency of events cannot be described as continuous.  Additionally, Central Avenue asserts that Torres's co-workers testified that they, not Rourke, planned the beach-themed sales event, thereby contradicting that allegation.

The record, however, contains sufficient evidence to meet Torres's burden.  As an initial matter, Central Avenue's characterization of the Torres's allegations—that most of the advances occurred during five interactions—is not supported by the record:  although Torres testified that some of Rourke's advances—such as hovering over her, touching her shoulders without consent, describing his genitals, and asking her out—sometimes occurred during the same interaction, she never states that those advances always occurred at the same time.  *See* Doc. 39-17 at 151:12–152:4, 153:4–10, 154:6–11, 155:5–12, 158:9–159:5, 161:4–162:5.  Further, to the extent that there is any ambiguity on the timing of these advances, the Court must construe the facts in the light most favorable to Torres at this procedural juncture.  *See Brod*, 653 F.3d at 164.  Accordingly, the Court declines to assume that all of the alleged advances happened during the same five interactions.

Regardless, the Court concludes that Torres has met her burden. The Second Circuit has emphasized that direct contact with an intimate body part "constitutes one of the most severe forms of sexual harassment," *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 177, 179 (2d Cir. 2012) (noting that parole officer rubbed up against and felt plaintiff's breasts), and courts in this Circuit have held that a single incident that involved such contact is sufficient to establish a hostile work environment claim, *see Springs*, 2019 WL 1429567, at *11 (holding that single incident where co-worker placed genitals on plaintiff's face was sufficient for hostile work environment claim); *see also Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 663 (E.D.N.Y. 2015) (holding that single incident where co-worker grabbed plaintiff's buttock was sufficient for hostile work environment claim). Accordingly, the Court concludes that Torres's testimony that Rourke slowly rubbed up against her so that she could feel his penis against her leg is sufficient in itself to establish that her workplace was actionably hostile.

Further, the totality of the circumstances in this case aggravate the severity of the incident. *Springs*, 2019 WL 1429567, at *11. Torres testified that, prior to August 2016, Rourke would often wink at her, and had forced her to wear a bathing suit as part of a sales event. Doc. 39-17 at 152:5–16, 184:4–185:4, 187:13–20, 190:2–25. According to Torres, Rourke's advances—hovering over her, repeatedly asking her out on dates, describing his genitals and his supposed sexual prowess—began in August 2016, when the alleged intimate contact occurred. *See id.* at 151:12–152:16. In the light most favorable to Torres, the Court finds that a reasonable factfinder could conclude that Torres faced a hostile work environment. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (holding that six sexual comments and multiple instances of non-

11

consensual touching and staring, occurring over seven months, constituted sufficient evidence for hostile work environment claim); *James*, 2017 WL 3923675, at *9 (holding that co-worker's multiple unwanted advances, comments about sexual activity and genitals, and attempts to touch and rub up against employee over a period of months were sufficiently severe and pervasive for a hostile work environment claim); *see also Springs*, 2019 WL 1429567, at *11.

Central Avenue also emphasizes that other evidence in the record contradicts Torres's testimony about some of Rourke's alleged actions.  Essentially, Central Avenue wants the Court to resolve these questions of fact.  But those questions are for the finder of fact to determine.  For the purpose of surviving summary judgment, Torres has presented evidence sufficient to support a jury finding that Rourke's conduct created a hostile work environment in violation of Title VII and the NYSHRL.  *See James*, 2017 WL 3923675, at *10.

### 2. Faragher/Ellerth Defense

"Under Title VII, individuals may not be held personally liable."  *James*, 2017 WL 3923675, at *10 (quotation omitted).  Accordingly, "[b]eyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer."  *Gorzynski*, 596 F.3d at 103.  "When, as here, the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer."  *Id.* (first citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); then citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).  But even then, the employer can prove by a preponderance of the evidence that

it is protected by the *Faragher/Ellerth* defense.[3]  *Springs*, 2019 WL 1429567, at *12

(citing *Gorzynski*, 596 F.3d at 103).  This defense consists of two elements:  (1) "the

employer exercised reasonable care to prevent and correct promptly any [discriminatory]

harassing behavior," and (2) "the plaintiff employee unreasonably failed to take

advantage of any preventative or corrective opportunities provided by the employer or to

avoid harm otherwise."  *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765; *see also*

*Springs*, 2019 WL 1429567, at *12.

      Here, it is undisputed that Rourke had a supervisory position over Torres.  *See,*

*e.g.*, Doc. 39-18 at 7:4–17, 9:8–22, 55:24–56:7.  Accordingly, his actions are

automatically imputed to Central Avenue.  *See Gorzynski*, 596 F.3d 93 at 103.  However,

as Central Avenue notes, it is also undisputed that Torres never reported any of Rourke's

alleged actions while she worked at Central Avenue, either through the procedures

outlined in the Policy or otherwise.  *See* Doc. 42 ¶ 18.  Central Avenue argues that the

presence of reporting procedures in the Policy satisfy the first prong of the

*Faragher/Ellerth* affirmative defense.  As to the second prong, Central Avenue contends

that Torres should have—but failed to—report any alleged harassment to any of her

supervisors or the other owners in the dealership, and she fails to provide any justifiable

excuse for her failure to do so.  Therefore, according to Central Avenue, the

---

[3] Where "sexual harassment 'culminate[s] in a tangible employment action, such as discharge, demotion, or undesirable reassignment, the employer is held strictly liable, and [n]o affirmative defense is available.'" *Chin-McKenzie v. Continuum Health Partners*, 876 F. Supp. 2d 270, 283 (S.D.N.Y. 2012) (quoting *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012)).  The parties dispute whether there is some evidence in the record to support the conclusion that Torres suffered a tangible employment action because of the alleged sexual discrimination.  However, the Court need not address that issue because, even assuming Central Avenue can raise the *Faragher/Ellerth* defense, the defense fails, as noted below.  *See Gorzynski*, 596 F.3d at 103 n.3.

*Faragher/Ellerth* defense bars Torres's hostile work environment claim regardless of whether there is a fact issue as to the merits of that claim.

Torres disputes the adequacy of the Policy, but the Court need not analyze the first prong because Central Avenue fails to show, as a matter of law, that Torres unreasonably failed to take advantage of that policy.   "[A] failure to report sexual harassment may be excused where the employee has 'a credible fear that her complaint would not be taken seriously or that she would suffer some adverse employment action as a result of filing a complaint.'"  *Chin-McKenzie*, 876 F. Supp. 2d at 285 (quoting *Leopold v. Baccarat*, 239 F.3d 243, 246) (2d Cir. 2001)).  The analysis in *Chin-McKenzie* is instructive here.  In that case, the court concluded that, even if the plaintiff failed to avail herself of her employer's anti-harassment policy, she would still prevail on summary judgment because of a fact issue regarding whether it would be unreasonable to forego using the reporting mechanisms in the policy.  *Id.* at 284–85.  The record in that case reflected that the alleged harasser's wife held a high position in the department in which the plaintiff work, and plaintiff noted that as a basis to fear reprisal.  *Id.* at 285.  Accordingly, the court concluded that the plaintiff had raised a triable issue of fact as to whether any failure to use the anti-harassment policy was "excused, and the *Faragher/Ellerth* defense thereby vitiated, because of her credible fear of retaliation."  *Id.*

Here, Torres's failure to use the Policy is even more justified than the circumstances described in *Chin-McKenzie* because the alleged harasser here is the general manager and part-owner of the dealership.  *See id.*  Further, there is evidence in the record that indicates that, as a part-owner, Rourke would be part of the team responsible for investigating any report Torres filed.  *See* Docs. 37-1 and 40-1 at 26:9–

27:10.  Moreover, Torres notes the additional chilling effect in place due to the possibility of facing discipline for filing a complaint that is determined to be frivolous, especially in light of the fact that the owners—including Rourke—decide whether an investigation is frivolous.  *See* Docs. 37-1 at 2 and 40-1 at 27:11–13.  Accordingly, the Court concludes that Torres has raised a triable issue of fact as to whether her failure to use the Policy was excused and, therefore, whether Defendants' *Faragher/Ellerth* defense would be vitiated, because of her credible fear of retaliation.  *See Chin-McKenzie*, 876 F. Supp. 2d at 285 (citing *Leopold*, 239 F.3d at 246).  The Court therefore denies summary judgment on these claims.

### C. Aiding and Abetting Under the NYSHRL

Torres alleges that Rourke is liable in his individual capacity under the NYSHRL. Unlike Title VII, the NYSHRL permits individual liability.[4]  *See Martin v. New York State*, No. 17 Civ. 9721 (DLC), 2019 WL 2053992, at *5 (S.D.N.Y. May 9, 2019). Section 296(6) of the NYSHRL states that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."  N.Y. Exec. Law § 296(6).  Based on the language of § 296 of the NYSHRL, several courts in this Circuit have held that a defendant who actually participates in the conduct that gives rise to a discrimination claim pursuant to the NYSHRL may be held personally liable under the statute.  *See*

---

[4] The Court notes that "[a] supervisor is an 'employer' for purposes of establishing liability under the NYSHRL if that supervisor actually participates in the conduct giving rise to [the] discrimination.'" *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (quotation omitted); *see also Madray v. Long Island Univ.*, 789 F. Supp. 2d 403, 408 (E.D.N.Y. 2011).  Accordingly, a plaintiff can assert an NYSHRL-based claim for hostile work environment against a supervisor in that supervisor's individual capacity.  *See Feingold*, 366 F.3d at 157.  Torres, however, does not allege a such a claim against Rourke.

*Martin*, 2019 WL 2053992, at *5; *see also Feingold v. New York*, 366 F.3d 138, 157–58 (2d Cir. 2004).

Rourke does not specifically address this section of the NYSHRL in the briefing, nor does he incorporate by reference any arguments or references to the record pertaining to the other arguments in the briefing. Accordingly, the Court concludes that Rourke has failed to meet his initial burden of demonstrating the absence of any genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The Court therefore denies summary judgment on this claim.

### D. ADA Claims[5]

*1. Discriminatory Termination*

The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Employment discrimination claims under the ADA are analyzed under the burden-shifting framework established by the U.S. Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) and its progeny. *See McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013); *see also Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 766 (2d Cir. 2015) (summary order). In order to establish a prima facie case of discrimination under the ADA, the plaintiff

---

[5] In the operative complaint, Torres did not characterize her single claim under the ADA as a claim for failure to provide a reasonable accommodation. *See* Doc. 20 ¶¶ 47–50. However, Central Avenue raised and briefed the issue of reasonable accommodation in its motion for summary judgment, Torres briefed the issue in her opposition, and Central Avenue replied to Torres's analysis. Docs. 36 at 15–17, 41 at 21–25, and 43 at 11–13. No party challenged whether Torres could now bring a claim under the ADA for failure to accommodate. Accordingly, the Court considers Torres's arguments regarding Central Avenue's alleged failure to provide a reasonable accommodation as an amendment to her complaint, and therefore concludes that Torres alleges two claims under the ADA: one for discriminatory termination and one for failure to accommodate. *See Quiller v. Nunez*, No. 16 Civ. 3202 (ER), 2020 WL 4475267, at *6 n.14 (S.D.N.Y. Aug. 3, 2020); *see also Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018) ("Discrimination claims under the ADA may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation.").

must show that:  (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability.  *McMillan*, 711 F.3d at 125.  "An adverse employment action 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"  *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71–72 (2d Cir. 2019) (quoting *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002)).  If a plaintiff meets this minimal prima facie burden and obtains the temporary presumption of discriminatory intent, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  *See Vega v. Hempstead Union Free. Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015); *see also Dawson*, 624 F. App'x at 766.  If the employer articulates such a reason, the burden then shifts back to the employee to show that the employer's reason was pretextual.  *See Vega*, 801 F. 3d at 83.

Central Avenue argues that Torres's claim for discriminatory termination fails as a matter of law because she does not allege any adverse employment action as a result of her alleged disability.  Torres, however, does not respond to any argument on this point, instead focusing her briefing on her ADA reasonable accommodation claim.[6]  *See* Doc. 41 at 21–25.  The Second Circuit has held that, "when a counseled party moves for summary judgment, 'a partial response [by the non-movant] arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of unmentioned claims.'"  *Kovaco v. Rockbestos-Suprenant*

---

[6] Indeed, Torres's opposition brief cites the legal standard for a reasonable accommodation claim but not a discrimination claim.  *See* Doc. 41 at 21–25.

*Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014)).  "If a district court so holds, it 'should . . . include a finding of abandonment of undefended claims or defenses.'"  *Id.* (quoting *Jackson*, 766 F.3d at 198)).  Here, Defendants moved for summary judgment on all claims in Torres's operative complaint, and their motion explicitly referenced both claims for discriminatory termination and reasonable accommodation.  *See* Doc. 36 at 18–21.  Because Torres opposed Defendants' motion with respect to some claims but not her discriminatory termination claim, the Court finds that Torres has abandoned that claim.  *See Kovaco*, 834 F.3d at 144.

Even if the claim for discriminatory termination were not deemed abandoned, the Court would still conclude that it fails as a matter of law because Torres did not meet her prima facie burden.  *McMillan*, 711 F.3d at 125.  It is undisputed that the altercation resulting in Torres's termination did not concern disability discrimination.  *See* Docs. 39-17 at 138:21–144:12 and 42 ¶ 13.  Further, it is also undisputed that Torres was offered her job back shortly after her employment ended.  Doc. 42 ¶ 15.  And to the extent that Torres did not feel comfortable returning to Central Avenue, she testified that she did not want to work there because of her frustrations with Mahidashti and the alleged sexual harassment by Rourke—not the alleged lack of any disability accommodations.  *See* Doc. 39-17 at 146:12–23.  Accordingly, the Court concludes that the record lacks any evidence showing that Torres suffered an adverse employment action because of her disability and, therefore, her claim fails as a matter of law.  *See McMillan*, 711 F.3d at 125.  Accordingly, summary judgment is granted on this claim.

### 2. Failure to Accommodate

Disability discrimination under the ADA "includes a failure to provide an employee with a reasonable accommodation for [her] disability."  *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016) (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006)).  Accordingly, such a claim for failure to

18

accommodate is also examined under the *McDonnell Douglas* burden-shifting framework. *Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 368–69 (S.D.N.Y. 2018). To establish a prima facie claim under the ADA for failure to accommodate, an employee must show that:  (1) she is disabled within the meaning of the ADA, (2) her employer is covered by the ADA and had notice of her disability, (3) she could perform the essential functions of her job with reasonable accommodation, and (4) her employer refused to provide such an accommodation despite being on notice.  *See Fox*, 918 F.3d at 73; *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015).  "Under the burden-shifting framework applied in these cases, after the plaintiff satisfies [her] burden of 'production and persuasion as to the existence of an accommodation that is facially reasonable,' the burden 'shifts to the defendant to rebut the reasonableness of the proposed accommodation,' which 'is in essence equivalent to the burden of showing, as an affirmative defense, that the proposed accommodation would cause the defendant to suffer an undue hardship.'"  *Berger*, 304 F. Supp. 3d at 369 (quoting *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 76 (2d Cir. 2016)).

"[G]enerally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed."  *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020) (per curiam) (quotation omitted).  However, where the disability is obvious—that is, if the employer knew or reasonably should have known that the employee was disabled—then the employer must engage in "an interactive process with their employees and in that way work together to assess whether an employee's disability can be reasonably accommodated."  *Id.* (quoting *Brady v. Wal-mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008)).  "To trigger the duty to engage the interactive accommodations process, the employer must have known, or have had sufficient notice such that the employer reasonably should have known, that the employee has a disability within the meaning of the Act, as opposed to a mere impairment."  *Id.* Even still, "[t]he employer's failure to engage in such an interactive process . . .  does not

relieve a plaintiff of her burden of demonstrating, following discovery, that some accommodation of her disability was possible." *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 101 (2d Cir. 2009); *see also McElwee v. Cnty. of Orange*, 700 F.3d 635, 642 (2d Cir. 2012). To meet that burden, a plaintiff must show that the costs of the accommodation, at least facially, do not clearly exceed its benefits. *See McElwee*, 700 F.3d at 642.

The parties' dispute centers on the fourth element for establishing Torres's prima facie case. Central Avenue contends that Torres was never denied a reasonable accommodation, asserting that she failed to request any specific accommodation for her alleged disability. According to Central Avenue, Torres merely complained that she could not stand for certain periods of time or perform some of the tasks required of her job, but failed to advise Central Avenue that her requests were related to her disability. Torres disagrees, stating that she requested accommodations in the form of being relieved from certain duties and obtaining assistance with her tasks, but that she was denied those reasonable accommodations. Further, Torres notes that, even absent a request, Central Avenue had a duty to engage in the interactive process to assess whether her disability could be reasonably accommodated because Central Avenue knew about her physical limitations.

The Court agrees with Torres, as the record contains sufficient evidence to raise a question of fact regarding whether Torres requested and Central Avenue refused to provide her accommodations for her scoliosis. Torres testified that she informed the management team at Central Avenue—including Rourke—about her condition and her physical limitations when she was hired, and that she repeatedly reminded them about those facts when she was faced with a task for which she sought an accommodation. *See* Doc. 39-17 at 34:11–21, 36:25–37:10, 46:8–24, 47:6–48:25, 90:3–20, 91:16–24, 99:11–14, 100:15–101:9, 111:2–10, 112:20–115:7, 130:7–20, 131:10–13. When she requested simple accommodations—such as help with placing license plates on cars or breaks to sit

down after standing for long periods of time—the management team rebuffed them and instead told her that those tasks were part of her job responsibilities. *See id.* at 92:15–20, 100:25–101:20, 111:12–20, 121:18–122:3, 130:21–24. Accordingly, Torres has raised a fact issue regarding this element, and the Court therefore denies summary judgment on this claim.

### E. Retaliation Claims Under Title VII and the NYSHRL

Title VII provides that it is unlawful for an employer to discriminate against any employee because the employee has opposed any practice that is an unlawful employment practice under Title VII. 42 U.S.C. § 2000e-3(a). Similarly, the NYSHRL makes it unlawful for an employer to retaliate or discriminate against an employee because she "has opposed any practice forbidden under this article or because . . . she has filed a complaint, testified or assisted in any proceeding under the article." N.Y. Exec. Law § 296(7). "The same standards govern retaliation claims under the two statutes." *Farmer v. Shake Shack Enter., LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020). To establish a prima facie case of retaliation under Title VII or the NYSHRL, a plaintiff must show that: (1) she engaged in a protected activity, (2) her employer was are of this activity, (3) the employer took adverse employment action against her, and (4) a causal connection exists between the alleged adverse action and the protected activity. *Chavis v. Wal-Mart Stores, Inc.*, 265 F. Supp. 3d 391, 406–07 (S.D.N.Y. 2017) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013)). Once the plaintiff establishes a prima facie case of retaliation, then the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* at 407 (citing *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015)). "If the defendant provides such an explanation, the presumption of retaliation dissipates, and the plaintiff must prove that the desire to retaliate was the but-for cause of the challenged employment action." *Id.* (quoting *Ya-Chen Chen*, 805 F.3d at 70).

Defendants briefly contend that Torres never participated in a protected activity, as she never reported the discriminatory conduct, and she never suffered an adverse employment action, as she was asked to come back to Central Avenue after her employment ended.  Torres, however, declined to address the issue in her brief.  Because Torres filed a response arguing that summary judgment should be denied as to some claims, but has failed to mention her claims for retaliation, the Court concludes that Torres has abandoned those claims.  *See Kovaco*, 834 F.3d at 143–44.

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  Specifically, the Court grants summary judgment on Torres's claims for discriminatory termination under the ADA and retaliation under Title VII and the NYSHRL, and otherwise denies summary judgment.  Defendants' requests for oral argument are DENIED as moot.  Docs. 36 and 43.  The parties are directed to appear for a status conference on April 14, 2021 at 10:30 a.m.  The parties are directed to dial (877) 411-9748 and enter access code 3029857, followed by the pound (#) sign.  The Clerk of Court is respectfully directed to amend the caption of this action to replace James O'Rourke with James Rourke and terminate the motion.  Doc. 35.

It is SO ORDERED.

Dated:    March 31, 2021
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.